## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

LELYN EDWARD BODINE,                    )
                        Petitioner,     )
v.                                      )          Case No. CIV-05-1164-M
                                        )
THE WARDEN OF JOSEPH HARP               )
CORRECTIONAL CENTER,                    )
                        Respondent.     )

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, initiated this action by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Petition) [Doc. #1] and a Brief in Support (Petitioner's Brief) [Doc. #7].  Attached to Petitioner's Brief is Petitioner's Appendix of Evidence (Petitioner's Appendix).  Respondent has filed a Response to Petition for Writ of Habeas Corpus (Response) [Doc. #24], and Petitioner has filed a "Traverse to the Return of the Respondent" (Petitioner's Reply) [Doc. #32].  Also pending before the Court are Petitioner's Motion for Appointment of Counsel [Doc.#16], Motion for Leave for Discovery [Doc. #18] and Motion for Determination on the Merits of Petitioner's Motion for Discovery and Appointment of Counsel [Doc. #22].  The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons set forth below, it is recommended that the Petition be denied.  It is further recommended that Petitioner's Motions be denied.

I.     **Procedural Background**

Petitioner was convicted of eleven counts of Lewd Acts with a Minor after a jury trial in the District Court of Oklahoma County, State of Oklahoma, Case No. CF-2002-4112. Petitioner was sentenced to eleven, twenty-year sentences to be served consecutively. *See* Original Record (OR) at 130-131, Judgment and Sentence.

Represented by new counsel, Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA) raising nine grounds for relief. *See* Response Ex. 1, Brief of Appellant at 21-44. The OCCA affirmed Petitioner's conviction on December 3, 2004. *See* Response Ex. 3, Summary Opinion.

II.    **Relevant Facts**

Petitioner was charged with committing lewd acts with his then seven-year-old step-granddaughter (DB).

The first witness called by the State was Joy Mason. Ms. Mason testified that she had been foster mother to DB and to DB's little brother since November 13, 2002. Transcript of Proceedings Volume I, Case No. CF-2002-4112 District Court of Oklahoma County (TR I) at 32. Ms. Mason had known both children since they were born, and she became the babysitter for the children after DB's brother was born. *Id.* at 35-36. Ms. Mason testified that on June 10, 2002, DB told her that Petitioner had "touched her privates." *Id.* at 41-42. On cross-examination, Ms. Mason testified that she became the foster parent of both DB and DB's brother when the brother's leg was broken and the two children were taken from their mother by the Oklahoma Department of Human Services (DHS). *Id.* at 51.

Tara Bodine, DB's mother, testified that she, her fiancé Cardell Calvin, and DB had moved into Petitioner's home in October or November of 2001. *Id.* at 60-61. Ms. Bodine was pregnant when she moved into Petitioner's home, and her son was born in February of 2002. *Id.* at 61. Ms. Bodine testified that Petitioner had adopted her after he married her mother. *Id.* at 59. Ms. Bodine testified that DB told her that Petitioner had been touching her in her "private." *Id.* at 65. Ms. Bodine further testified that she, herself had been raped by Petitioner when she was a child. *Id.* at 73. She testified that both of her children are in foster care under the supervision of the DHS. *Id.* at 68.

DB testified that Petitioner had touched her "privates" and had made her touch his "privates." DB gave some details such as the times and places of some of the incidents. She testified that Petitioner had touched her "private" with his "private, with his foot and with his hands. *Id.* at 103-126. She testified that Petitioner had touched her with his hand more than ten times. *Id.* at 121.

Maria Rosales Lambert identified herself as a "forensic interviewer at the child abuse response and evaluation center." *Id.* at 138. She testified that she had interviewed DB on July 1, 2002. *Id.* at 144. Ms. Lambert testified that DB told her that Petitioner had touched her on "those parts that were not okay to touch." *Id.* at 157.[1]

Kathy Hatelid, a physician's assistant, testified that she had been working at Children's Hospital since 1992. She physically examines children when physical or sexual

---

[1]The interview was videotaped, and the jury was shown the tape of the interview after both the prosecutor and Petitioner's attorney agreed. TR II at 4-8.

3

abuse is suspected.  TR II at 10.  Ms. Hatelid testified that DB had sustained a loss of over

50% of her hymenal tissue.  *Id.* at 25.  According to Ms. Hatelid, this finding was consistent

with DB's having been sexually abused.  *Id.* at 26.  On redirect examination, Ms. Hatelid

stated that these positive physical findings were consistent with a finger or penis being

repeatedly inserted into DB's vagina.  *Id.* at 31.  On recross-examination, Ms. Hatelid stated

that the loss of hymenal tissue she had found upon examination of DB could have been

caused by a finger, a penis, or a foreign object.  *Id.* at 32.

**III.**   **Grounds for Relief**

In his Petition before this Court, Petitioner raises four grounds for relief:

(1)   the direct appeal was a "'Mask of Injustice'" in that the appellate process was
       fundamentally unfair;[2]

(2)   trial counsel was ineffective in failing to question the prosecutor about
       interviews the prosecutor held with the victim;

(3)   two instances of prosecutorial misconduct – making a false statement in front
       of the jury and concealing exculpatory evidence from the defense – deprived
       Petitioner of a fair trial; and

(4)   the trial court committed judicial misconduct by failing to disclose an ex parte
       communication with the jury after the jury had rendered the verdict.

---

[2]Petitioner's first ground for relief is a broad, general criticism of the OCCA's handling of
his direct appeal, which he characterizes as a "mask of injustice."  According to Petitioner, the direct
appeal was "inadequate, ineffective, and unmeaningful [sic]."  In his brief, Petitioner criticizes the
way the OCCA handled the particular issues raised in his appeal and request for rehearing.  These
same issues, as they may apply to Petitioner's request for federal habeas relief, are addressed
separately in Petitioner's remaining propositions.  Therefore, no separate analysis of Petitioner's first
ground for relief is required here.

**IV.**    **Standard of Review**

This Court reviews the merits of Petitioner's claims under the standard of review set forth in the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to AEDPA, a petitioner is not entitled to habeas corpus relief if his claim has been adjudicated on the merits by the highest state court unless the state court's adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1),  2254(d)(2).

The Supreme Court has analyzed and explained the meaning of the relevant portions of the statute:

> A state-court decision is contrary to . . . clearly established precedents if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.  A state-court decision involves an unreasonable application of [the Supreme] Court's clearly established precedents if the state court applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*, 544 U.S. 133, 141 (2005) (internal citations omitted).  A state court's determinations of fact are presumed to be correct unless rebutted by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

5

V.     **Analysis**

A.     **Ground Two: Ineffective Assistance of Trial Counsel**

During her closing argument, the prosecutor argued that DB had no motive to lie about the sexual abuse to which she had testified.   The prosecutor made the following statement:

> [T]he motive I want to talk to you about is the motive of [DB] because there is no motive, but the truth.   There is no motive for her to sit in that chair and talk to me for the third time and you for the first time about these horrific things in her life.

TR II at 91.  *See also* Response Ex. 1, Brief of Appellant at 40.  Petitioner states that after the prosecutor made this statement, trial counsel should have "immediately called the prosecution as a witness en camera to delve into her interviews with [DB], as well as discover any and all video/audio recordings and a list of questions asked and responses given." Petitioner's Brief at 22.  According to Petitioner, "there was sufficient evidence to manifest a real possibility the child's testimony was tainted" by the prosecutor in the two previous interviews to which the prosecutor alluded in her closing argument.[3]  *Id.* at 24.

---

[3]Petitioner also contends that his trial counsel was ineffective in failing to cross-examine DB's mother, Tara Bodine, and the babysitter/foster mother, Joy Mason.  In fact, however, defense counsel cross-examined both of these witnesses.  From Ms. Bodine, defense counsel elicited impeachment evidence to the effect that Ms. Bodine had listed her fiancé, Cardell Calvin, on her son's birth certificate rather than John Goforth, identified at trial as the boy's real father.  TR I at 78-79. From Ms. Mason, defense counsel elicited the information that Ms. Bodine's son was placed in foster care because he had a broken leg.  *Id.* at 51.  Defense counsel questioned both women about several men who had been in and out of Ms. Bodine's life.  *Id.* at 52-53; 80.  Defense counsel's cross-examination of these witnesses did not fall below an objective standard of reasonableness. *See* discussion *infra* at 7.

On direct appeal, the OCCA reviewed this and other allegations of ineffective assistance of trial counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), which provides a two-part test for determining whether a petitioner's Sixth Amendment right to effective assistance of counsel has been violated. First, a petitioner must establish that counsel's performance fell below an objective standard of reasonableness. *Id*. at 687. Second, the petitioner must establish prejudice – that but for counsel's errors, the outcome of the proceedings would have been different. *Id*. In assessing prejudice, the court examines the totality of the evidence, not just the evidence helpful to the petitioner. *See Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999). In analyzing an ineffective assistance of counsel claim, the court "may address the performance and prejudice component in any order, but need not address both if [petitioner] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-1293 (10th Cir. 1998). The OCCA found that Petitioner had failed to meet either the cause or prejudice prongs of the *Strickland* test. *See* Response Ex. 3, Summary Opinion at 5-6.

The OCCA's adjudication of this issue did not result in a decision that is contrary to or an unreasonable application of *Strickland*, nor is it a decision based on an unreasonable determination of the facts in light of the evidence presented. As Respondent notes in his Response, there is no evidence that any recordings existed, other than the recording played for the jury at Petitioner's request. Moreover, there is no evidence that DB's testimony was tainted by the prosecutor or anyone else. Finally, the fact that the prosecutor interviewed her

primary witness twice before trial is indicative of nothing other than reasonable trial preparation.  Petitioner is not entitled to habeas relief on this ground.

### B.      Ground Three: Prosecutorial Misconduct

Petitioner claims that prosecutorial misconduct deprived him of a fair trial in that (1) the "prosecution's known false statement in front of the jury" was in effect "calling . . . defense counsel a liar" and (2) the prosecution concealed exculpatory evidence.  Petition at 5; Petitioner's Brief at 27-32.

The first instance of alleged prosecutorial misconduct is based on the following exchange during defense counsel's cross-examination of Maria Rosales Lambert, the forensic interviewer.

> DEFENSE COUNSEL:  Now, had you been made available copies of all of the police reports in this case by the time you interviewed [DB]?
>
> MS. LAMBERT:  Generally, when we staff the case the officer will bring their reports and then the DHS worker will bring the referral.  So we ask for them to bring that information as well as any other history.  And in looking at my white sheet in that particular day what I reviewed was only the police report and it was dated Jun 18 of '02 by Officer Kathy Dodd.
>
> DEFENSE COUNSEL:  Is that the one where she terminated the interview of [DB] because [DB] was using more advanced terminology, that she felt like somebody like herself might –
>
> PROSECUTOR:  Your Honor, for heaven's sake that is absolutely false.  I cannot imagine – may we approach?
>
> THE COURT: Wait, wait, wait.  Settle down.  Come up.

TR I at 168-169.  At a bench conference outside the hearing of the jury, the prosecutor stated to the trial court that defense counsel was "putting false information in front of the jury

because that's not what any police report says." *Id.* at 169.  In fact, however, Officer Kathy

Dodd did make a similar statement in a crime report dated June 18, 2002:

> The [victim] was repeating words the [reporting person] would use or an adult
> would use in reference to this crime, so I asked no further questions so
> detectives could do an interview of the [victim].

Petitioner's Appendix, Crime Report at 75-76.  The trial court ultimately sustained the

prosecutor's objection that defense counsel was "cross-examining [Ms. Lambert] on a police

report that she didn't make." TR I at 169.  The trial court did, however, tell defense counsel

that if he could lay a proper foundation for the document, the trial court would consider

admitting it as evidence.  *Id.* at 170.  Defense counsel made no further attempt to introduce

the crime report or to call Officer Dodd as a witness.[4]

Prosecutorial misconduct gives rise to federal habeas corpus relief only when such

misconduct either violated a specific constitutional right or "so infected the trial with

unfairness as to make the resulting conviction a denial of due process."  *Donnelly v.

DeChristoforo*, 416 U.S. 637, 643 (1974).  In this case, the OCCA stated that "any error in

the prosecutor's comment made during the questioning of Maria Lambert concerning the

---

[4]Petitioner suggests in his Brief that trial counsel was ineffective in failing to "set the record
straight" with regard to the report by Officer Dodd.  Petitioner's Brief at 31.  On direct appeal,
appellate counsel stated that the defense attorney should have "impeached DB with the interview
by Officer Kathy Dodd, wherein [DB] denied any penetration and used such mature sexual language
that Officer Dodd terminated the interview."  Response Ex. 1, Brief of Appellant at 40.  As
discussed *supra* at 7, the OCCA analyzed all instances of ineffective assistance of counsel under
*Strickland* and rejected them.  *See* Response Ex. 3, Summary Opinion at 5.  Although defense
counsel failed to use Officer Dodd's crime report to Petitioner's advantage, Petitioner cannot show
that, had this evidence been introduced, the outcome of the trial would have been different.  The
OCCA's disposition of this claim does not constitute an unreasonable application of *Strickland*.

victim's interview with Officer Dodd was invited by Appellant." Response Ex. 3, Summary Opinion at 6.  The OCCA further determined that Petitioner had not shown "how the prosecutor's remark or conduct was error."  The OCCA then determined that "further consideration of the error is waived."  *Id.*

The limited statement made by the prosecutor within the hearing of the jury did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly* at 643.  Although the statement of Officer Dodd, if introduced into evidence, might have cast some doubt on the credibility of DB, the fact that DB testified at trial allowed the jury to observe DB and determine her credibility.  The OCCA's adjudication of this issue did not result in a decision that is contrary to or an unreasonable application of *Donnelly*, nor is it a decision based on an unreasonable determination of the facts in light of the evidence presented.

In his second allegation of prosecutorial misconduct, Petitioner claims that the prosecutor failed to provide defense counsel with exculpatory evidence.  According to Petitioner, Tara Bodine and her fiancé were charged with "child abuse of the brother to the victim[,]"  Petitioner's Brief at 14, and the prosecutor withheld this evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  Petitioner's Brief at 36.  *Brady* held that the State's suppression of "evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment[.]" *Brady*, 373 U.S. at 87.  "[T]o establish a *Brady* violation, a habeas petitioner must show that (1) the prosecutor suppressed evidence; (2) the evidence was favorable to the defendant as exculpatory or impeachment evidence; and (3)

the evidence was material." *Knighton v. Mullin*, 293 F.3d 1165, 1172 (10th Cir. 2002) (citation and internal quotation omitted). "Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999).

In this case, the OCCA stated that the record indicated that defense counsel knew "about the underlying facts of the charges against Tara Bodine." Response Ex. 3, Summary Opinion at 6. Certainly the jury learned through both direct examination and cross-examination of Ms. Bodine and Ms. Mason that the children had been removed from Ms. Bodine's care after DB's brother suffered a broken leg. The underlying factual basis of the criminal charges lodged against Ms. Bodine were admitted into evidence. Therefore, additional evidence showing that criminal charges had been filed against Ms. Bodine based on those facts does not meet the standard of "material evidence" set forth in *Strickler*. There is not a reasonable probability that, had this evidence been disclosed to the defense, the result of the proceeding would have been different. The decision of the OCCA represents a reasonable application of *Brady* and *Strickler*. The decision is not an unreasonable determination of the facts in light of the evidence presented.

### C.   Ground Four: Judicial Misconduct

Petitioner contends that the trial court committed "judicial misconduct" by having an *ex parte* communication with some of the jurors after Petitioner was convicted but before he was sentenced. Petitioner's Brief at 38. On direct appeal, appellate counsel contended that the eleven, twenty-year sentences to be served consecutively constituted an excessive

11

sentence.  Response Ex. 1, Brief of Appellant at 37-40.  Appellate counsel stated that "if in fact the [trial] court relied upon the juror's [sic] wanting the sentences to run consecutive [sic] and not 'together' or concurrent [sic], this would be an impermissible consideration based upon the *ex parte* discussion with them out of the presence of Appellant and his counsel."  *Id.* at 39.

In its Summary Opinion, the OCCA stated that this issue was waived for lack of support in the record:

> First, we find nothing in the appellate record to support Appellant's argument the prosecutor met *ex parte* with the judge and jurors after the return of the verdicts.

Response Ex. 3, Summary Opinion at 6.  This statement is puzzling because it appears that a copy of the transcript of the sentencing proceeding was part of the record before the OCCA.  The Designation of Record on Appeal includes, the "transcript of the sentencing proceeding held on or about August 4, 2003," OR at 135, and the docket sheet for OCCA Case No. F-2003-925, *Bodine v. State*, reflects that the fifteen-page transcript of the sentencing proceedings was received by the OCCA on December 11, 2003.[5]  A copy of the Transcript of Sentencing, Case No. CF-2002-4112, is attached as Exhibit 8 to Petitioner's Appendix of evidence.  The transcript reflects that at the sentencing hearing, defense counsel put on one witness, a minister who testified that a prison sentence was "totally inappropriate" in this case.  *Id.* at 185.  Defense counsel then asked the court to order Petitioner's sentences

---

[5]This Court takes judicial notice of the docket sheet for *Bodine v. State*, OCCA Case No. F-2003-925, which may be accessed at www.oscn.net.

to be served concurrently.  *Id.* at 185-186.  After reviewing the evidence and noting the swiftness with which the jury had returned the guilty verdict, the prosecutor made the following remarks:

> PROSECUTOR: This jury recommended 20 years which is all they could do on every count.  *And they told this Court afterwards that they meant 220 years when they said it.*

*Id.* at 187 (emphasis added).  This statement indicates that the prosecutor and the trial judge met with the jury "afterwards," after Petitioner was convicted.

Petitioner relies on *Rushen v. Spain*, 464 U.S. 114 (1983), for the proposition that his rights to "personal presence" and representation by counsel at "critical stages of the trial" were violated by the trial court's conversation with jurors after Petitioner's conviction. Petitioner's Brief at 40.  In *Rushen*, the trial court had spoken off the record and before the end of the trial to a juror about the juror's recently recovered memory of the murder of an acquaintance.  The juror had been a child at the time and did not remember the murder until impeachment testimony regarding the murder was introduced during trial.  The juror continued to serve on the jury, and the defendant was convicted.  On habeas review, a federal district court held that an unrecorded *ex parte* communication between trial judge and juror can never be harmless error.  The federal court of appeals agreed.  The Supreme Court, however, disagreed with the lower federal courts and held that such communications can be reviewed for harmless error.  *Id.* at 118-119.

The first step of analyzing Petitioner's claim under *Rushen* is to determine whether the *ex parte* communication between the trial judge and jurors happened at a "critical stage"

of the proceedings.  If so, Petitioner need not demonstrate prejudice from the absence of his counsel at a particular proceeding.  *See United States v. Cronic*, 466 U.S. 648, 659 (1984) ("The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of the trial.").  A stage in criminal proceedings is "critical" when "circumstances . . . are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."  *Id.* at 658.  Examples of critical stages include arraignment, *Hamilton v. Alabama*, 368 U.S. 52, 55 (1961), post-indictment pre-trial lineup, *United States v. Wade*, 388 U.S. 218, 236-37 (1967), or cross-examination, *Davis v. Alaska*, 415 U.S. 308, 318 (1974).  Even a pre-trial proceeding is a critical stage if it "protect[s] the fairness of the trial itself[.]" *Schneckloth v. Bustamonte*, 412 U.S. 218, 239 (1973).  The Supreme Court has also recognized that sentencing proceedings are critical stages to which the right to counsel applies.  *See Mempa v. Rhay*, 389 U.S. 128, 133-134 (1967).  The Supreme Court has also stated, however, that "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Cronic*, 466 U.S. at 658.  "Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *Id.*

In this case, the trial court's challenged *ex parte* communication with the jury took place after Petitioner was convicted, after the jury had recommended the maximum sentence for each offense, after the jury had completed its duties, and well before Petitioner's sentence was imposed.  Therefore, the communication in question did not occur at a "critical stage"

14

of the trial.  Moreover, there is no indication that the *ex parte* communication influenced the trial judge's sentence.  In sentencing Petitioner,  the trial judge made the following remarks:

> THE COURT: There are cases that this Court has heard that shock this conscious [sic].  But the violence that one does to a child and the violence that that child will live with for the rest of her life, as I have said on more than one occasion, we can only hope that she can work through it.  But she will be in prison for the rest of her life because of your actions.
>
> Ms. Pope is correct, the jury found guilt on your part on each and everyone [sic] of these counts in a very short time.  They had very little – they had, I can say, had no doubt as to the evidence presented by the State of Oklahoma in this case.   For those reasons all of these cases will be ordered to serve consecutively.

Petitioner's Appendix Ex. 8, Transcript of Sentencing at 188.  There is no indication from the trial judge's statements that he was biased as a result of his post-trial communication with the jurors.  The trial judge openly stated that it was the nature of Petitioner's crimes, the strength of the evidence, and the psychological harm done to the victim which led him to impose consecutive sentences.   Petitioner is not entitled to habeas relief based on the trial judge's communication with the jury after Petitioner's conviction.

### VI.    Petitioner's Pending Motions for Discovery and Appointment of Counsel

In light of the recommended dispositions of Petitioner's claims for federal habeas relief, it is recommended that Petitioner's pending motions seeking appointment of counsel and discovery be denied.  No evidentiary hearing is warranted for resolution of Petitioner's claims.  *See* Rules Governing Section 2254 Cases in the United States District Courts, Rule 8.  Given the AEDPA standard of review governing this case, Petitioner cannot show good cause for conducting discovery on any issue.  *See id.*, Rule 6.  Moreover, Petitioner has

demonstrated his ability to present his claims, pertinent legal authority and material from the state court record and has not shown good cause for court appointment of counsel.

## RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] be denied. It is further recommended that Petitioner's Motion for Appointment of Counsel [Doc. #16], Motion for Leave for Discovery [Doc. #18] and Motion for Determination on the Merits of Petitioner's Motion for Discovery and Appointment of Counsel [Doc. #22] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by June __28th__, 2006.  *See* Local Civil Rule 72.1.  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred by the District Judge in this matter and terminates the referral.

DATED this __8th__ day of June, 2006.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE